Eastern District of Kentucky
F I L E D
DEC 2 0 2006
AT LONDON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 06-66-GWU

DIANA SWANNER,                                                           PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that the plaintiff suffered from degenerative disc disease, a generalized anxiety disorder, a depressive disorder and a history of edema in the lower extremities. (Tr. 21). He determined that the plaintiff retained the capacity to perform medium exertion work that involved only routine, simple, non-detailed tasks, where public and co-worker contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the workforce were infrequent and gradually introduced. (Tr. 24). A vocational expert opined that the plaintiff could not perform her past work as that involved contact with the public, but could perform significant numbers of alternative jobs. (Tr. 24). Thus, the claims for benefits were denied. (Tr. 27).

Swanner's arguments focus on the ALJ's improper assessment of her mental condition. She notes that the two agency medical reviewers' examination of the record predated an evaluation by Robert Spangler and, thus, their opinions could not properly be used to reject his opinion. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

7

Swanner

In her Reconsideration Disability Report, Swanner had noted that she suffered from depression, panic attacks, nervousness, and trouble concentrating. (Tr. 109). At the administrative hearing, the plaintiff had testified that she had had two years of college, and had been treated at the Comprehensive Care Center for a year and one half at the time of the administrative hearing. (Tr. 42). She was taking Prozac for depression. (Tr. 49). She also indicated that she had problems with nervousness and anxiety, did not want to be around people, and took Xanax. (Tr. 50).

Medical records in Exhibit 4F indicate that a number of sources primarily treating the plaintiff's physical problems at least briefly referenced mental conditions, albeit with few details. Doctors such as Constance Chesner and W. L. Hagan as well as Social Worker Deidra Fisher Taylor and Physician's Assistant R. Durbin had diagnosed anxiety, depression and/or a panic disorder since at least April, 2000 (Tr. 158,159, 161, 213, 225, 230.). Prison staff during an incarceration in 2002 noted a diagnosis of anxiety and substance abuse. (Tr. 233). Progress notes from Melissa Scaccio, physician's assistant, indicate that she diagnosed depression in late 2003. (Tr. 244). Mike Napier, a physician's assistant, and Dr. Sharon Colton co-signed progress notes in 2004 and 2005 also indicating that anxiety and/or depression was diagnosed. (Tr. 316, 317, 318, 324, 353, 354, 355, 356, 359, 360, 376, 394, 396, 398).

Kevin Eggerman provided a consultative mental health examination in early 2004 and diagnosed a depressive disorder in partial remission. (Tr. 258). He cited

8

Swanner

past year GAFs of 60, suggestive of moderate symptoms as per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.) (DSM-IV). (Id.). Eggerman did not complete a residual functional capacity evaluation form, although he did make some comments in his report indicating that the claimant was mildly limited in interacting with the public, co-workers and supervisors, and was moderately limited in responding to work pressures. (Id.).

Robert Spangler provided his own one-time mental health evaluation. His diagnostic impression after the evaluation was of a depressive disorder, an anxiety disorder, Oxycontin abuse (in full remission), and alcohol abuse (in full remission). (Tr. 342). A GAF of 60, again suggestive of moderate symptoms, was cited as part of the report (Id.) Unlike Eggerman, however, Spangler actually completed a detailed form suggesting "seriously limited but not precluded" abilities to deal with work stresses, deal with the public and no ability to demonstrate reliability. (Tr. 346-347).

The plaintiff was also, as noted previously, seen at the Cumberland River Comprehensive Care Center (CRCCC). Dr. Syed Raza indicated in January, 2004 that the plaintiff had a dysthymic disorder and a possible adjustment disorder, and (with what may be a reference to remission) an opoid abuse disorder with a GAF of 56[1]. (Tr. 309). The previous month, he had also cited similar GAF scores of 56 and

---

[1] Scores between 51 and 60 are consistent with "moderate . . . difficulty in social, occupational or school functioning" as per the <u>Diagnostic and Statistical Manual of</u>

55 (Tr. 311, 314), which like Eggerman and Spangler's GAFs, was consistent with moderate symptomatology.

While Spangler's specific restrictions were more restrictive than that ultimately credited by the ALJ for Swanner's mental health restrictions, as the defendant notes, all three examining sources ultimately felt the plaintiff's general functional level (as represented by the GAF) was about the same. Spangler was not a treating source, inherently entitled to more weight than Eggerman. Moreover, even though Spangler filled out a detailed form, two of his most severe specific restrictions (i.e., relating to work stress and the public) were countered by Eggerman and the other (i.e., reliability) were countered by the CRCCC treating notes (e.g., Tr. 303, 307).

The decision will be affirmed.

This the ___20___ day of December, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE

---

Mental Disorders (4th Ed.) (DSM-IV).